
JS¥

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6862 | **DATE** | 4/25/2002 |
| **CASE TITLE** | MICHAEL D. HUGHES vs. JO ANN B. BARNHART | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Status hearing held. Enter Memorandum Opinion And Order. The Commissioner's findings are supported by substantial evidence and, thus, are conclusive. Therefore, the Commissioner's decision that plaintiff was not disabled is affirmed, and plaintiff's motion for summary judgment is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | **Document Number** |
| | Notified counsel by telephone. | | APR 2 6 2002 date docketed | |
| ✓ | Docketing to mail notices. | | | 12 |
| ✓ | Mail AO 450 form. | | 15 docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | LG | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

APR 2 6 2002

MICHAEL D. HUGHES,                   )
SS# 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,                     )
                                     )
            Plaintiff,               )          Case No. 01 C 6862
                                     )
      v.                             )          The Honorable John W. Darrah
                                     )
JO ANNE B. BARNHART[1],              )
                                     )
            Defendant.               )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Michael D. Hughes ("Plaintiff"), moves, pursuant to Federal Rule of Civil Procedure 56(a), for summary judgment. Plaintiff moves for reversal of the Commissioner of Social Security's ("the Commissioner") decision that he was not disabled. For the reasons that follow, Plaintiff's Motion for Summary Judgment is denied.

## PROCEDURAL HISTORY

Plaintiff, Michael D. Hughes ("Hughes"), applied for Disability Insurance Benefits on May 18, 1999, age thirty-two at the time, on the ground that he had become disabled due to breathing problems, a herniated disc in his back, and depression. The Social Security Administration initially denied his application on September 15, 1999, and again upon reconsideration on March 8, 2000.

Hughes filed a request for a hearing which was granted. The hearing was held before

---

[1]On November 9, 2001, Jo Anne B. Barnhart became Commissioner of Social Security. In accordance with Federal Rule of Civil Procedure 25(d)(1) and 42 U.S.C. § 405(g), Jo Anne B. Barnhart is automatically substituted for Larry G. Massanari as the Defendant in this civil action.



Administrative Law Judge ("ALJ") John Mondi on January 10, 2001. The ALJ determined that Hughes was not disabled in a decision dated March 21, 2001. The ALJ's decision was affirmed by the Appeals Council on July 16, 2001, making the ALJ's decision the final decision of the Commissioner.

## THE ADMINISTRATIVE PROCEEDING

### Plaintiff's Testimony

Plaintiff was born on July 18, 1967. He has the equivalent of a high school education and limited college experience. At the time of the ALJ's decision, he was thirty-three years old and had two children, nine and two years old. Plaintiff worked as a steel fabricator from 1992 until 1996, when he moved to Chicago with his wife. In the summer of 1998, he worked for a welding company but quit after two months due to depression. He worked as a wood floor installer from September until November in 1998 and did some general contracting and remodeling work in 2000. Plaintiff earned $23,414.62 in 1998.

At the hearing before the ALJ on January 10, 2001, Plaintiff testified that he was unable to work due to shortness of breath, low tolerance for dust particles or chemicals, a bad back and because he took anti-depressant medication. He also testified that he had difficulty climbing stairs, bending and sleeping, and had experienced a weight gain of thirty-five pounds. Plaintiff testified that he took up to fifteen Advil each day and that the only side effects he experienced from his medication were weight gain, dry mouth, and irritable bowel syndrome.

Plaintiff testified that he had not abused cocaine for 145 days, although he has a history of cocaine abuse. He was treated for drug abuse in 1985 and in August 2000. Plaintiff last used cocaine in February 1998.

-2-

He began treatment for depression in August 2000. In January 1998, he had been prescribed anti-depressant medication but stopped taking it after three months because he felt he did not need it.

Plaintiff further testified that he could lift twelve pounds, sit for thirty-five minutes, and walk for ten minutes. He also stated that he could not take care of his children alone because he could not lift his two-year-old child.

### Vocational Expert's Testimony

A Vocational Expert ("VE") also testified at the hearing before the ALJ. The VE testified that Plaintiff's past work as a welder and fabricator was medium, semi-skilled work and that his work as a wood flooring installer was heavy, semi-skilled work. The VE also testified that a person of Plaintiff's age; education; experience; and with Plaintiff's ability to lift fifty pounds occasionally and twenty-five pounds frequently and sit, stand, and walk for six hours each in an eight-hour workday could perform Plaintiff's past welding and fabricating jobs. A person with moderate restrictions in his ability to: (1) maintain attention and concentration for extended periods, (2) complete a normal workday and workweek, (3) work at a consistent pace, (4) get along with co-workers and peers, and (5) set realistic goals or make plans independently of others would be precluded from all work.

### Medical Evidence

The following medical evidence was in the record that was considered by the ALJ. In August 1998, Plaintiff was admitted to the hospital complaining of racing thoughts, inability to attend work,

and accelerated thinking.[2] Plaintiff reported that he either slept all day or was "driving all day". He described a history of attention deficit hyperactivity disorder ("ADHD"), depression, and a manic episode. He also reported that he was losing control with his gambling, and he feared losing his job because he was argumentative. Plaintiff also reported abusing cocaine.

On the basis of these reports, Dr. Wyma diagnosed Plaintiff with bipolar affective disorder, manic, with cocaine abuse significantly affecting his condition. Dr. Wyma also indicated that a diagnosis of ADHD would have to be verified. Dr. Wyma prescribed medication and recommended treatment, stating that Plaintiff required further treatment for his substance abuse.

In September 1999, two state agency physicians reviewed the medical evidence and determined that Plaintiff could lift fifty pounds occasionally and twenty-five pounds frequently and sit, stand and walk for six hours in an eight-hour workday.

On January 14, 2000, Dr. Alan Nelson performed a psychiatric evaluation at the request of the state agency. Based on Plaintiff's reports that he stayed in bed all day twice a week, went out only when necessary, did no shopping or cooking, and had no hobbies, Dr. Nelson diagnosed Plaintiff as having depressive and personality disorder and past history of cocaine and alcohol abuse. Dr. Nelson also noted that Plaintiff was chronically moderately to severely depressed and anxious for five years. Dr. Nelson also noted that these symptoms were worsening.

In January 2000, Plaintiff began receiving psychiatric treatment on a regular basis. The following evidence was contained in reports of Plaintiff's counseling sessions that were included in the record that was considered by the ALJ.

_____

[2]The Court will only consider Plaintiff's mental disorders in disposing of Plaintiff's Motion for Summary Judgment as Plaintiff has only raised his mental disorders, and none of his other impairments, in this motion.

In January 2000, Plaintiff stated to his counselor that he was a stay-home father and that he provided child care, although he and his wife ("Mrs. Hughes") disagreed about parenting. Plaintiff reported that he had not used cocaine in the last two months.

On February 23, 2000, Plaintiff reported to his counselor that his mood was good and that he was doing some remodeling work. However, he also stated that it was hard to focus. Also in February 2000, Dr. Tomasetti, a psychologist, evaluated Plaintiff's mental impairment. Dr. Tomasetti found that Plaintiff had a depressive disorder but had no manic syndrome. Dr. Tomasetti found that Plaintiff had (1) a slight limitation in daily living; (2) moderate difficulty with social functioning; (3) frequent deficiencies of concentration, persistence, or pace; and (4) never had an episode of deterioration or decompensation in work or work-like settings. Dr. Tomasetti concluded that Plaintiff had the mental capacity to engage in substantial gainful employment.

On March 21, 2000, Mrs. Hughes reported to her husband's counselor that she suspected that Plaintiff was abusing drugs again because he disappeared for long stretches of time. Plaintiff reported to the counselor that he was gambling. In May 2000, Plaintiff tested positive for drugs but attributed it to dietary or food supplements. At that time, he was living with his parents and worked ten hours per week.

On July 22, 2000, Plaintiff was admitted to a psychiatric unit at Central DuPage Hospital after he stopped taking his medication and started using cocaine. He was transferred to the partial hospital program at Central DuPage Hospital. Plaintiff reported involvement in gambling to earn money as a bouncer and a protector. Plaintiff was still using cocaine and drinking. On August 11, 2000, Plaintiff reported that he slept well, felt good, and that the medication had no side effects. August 17, 2000, Plaintiff grabbed a fellow patient during a group meeting and was

administratively discharged on August 18, 2000.

In September 2000, Plaintiff reported to his counselor that, in the past, he had abused drugs twice a week for sixteen years but that he was currently attending Alcoholics Anonymous meetings and another support group. On September 20, 2000, Hughes reported to his counselor that he felt good, slept through the night, and was taking steps to lose weight. On September 28, 2000, he reported to his counselor that he slept well and was refinishing his basement. His counselor noted that he had very mild hypermania.

On October 21, 2000, the counselor's notes indicate that Plaintiff went on a gambling binge.

On January 9, 2001, Dr. Wyma wrote a letter to Plaintiff's attorney regarding Plaintiff's bipolar affective disorder and substance abuse. Dr. Wyma stated that Plaintiff had been disabled for the past several years. However, Dr. Wyma stated that he could not tell whether the substance abuse or the mental illness was causing Plaintiff's disability.

*ALJ's Findings and Decision*

The ALJ made the following findings:

1.   [Plaintiff] met the disability insured status requirements of the Act on January 14, 1998, the date he alleges he became unable to work, and continues to do so through at least the date of this decision.
2.   [Plaintiff] appears to have engaged in substantial gainful activity for significant periods after January 14, 1998, but is not currently so engaged.
3.   [Plaintiff] has a "severe" impairment involving asthma, a back injury, depression, and substance abuse: [sic] but not an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.
4.   [Plaintiff's and Mrs. Hughes'] testimony, to the extent that they are alleging he suffers from disabling limitations, much more disability independent of substance abuse, is not credible when compared against the objective medical evidence and factors in SSR 96-97p.
5.   [Plaintiff] has the residual functional capacity to perform the physical exertional requirements of work involving lifting up to 50 pounds

occasionally or carrying up to 25 pounds frequently; mentally, he can perform at least routine, simple, low stress work.

6. [Plaintiff] is able to perform past relevant work.

7. Alternatively, given [Plaintiff's] younger age of 33 years, high school equivalent education, and residual functional capacity to perform medium level unskilled work, other jobs exist in significant numbers that he can perform, consistent with Section 404.1569, Regulations No. 4 and Medical-Vocational Rule 203.28, Table No. 3, Appendix 2, Subpart P, Part 404.

8. [Plaintiff] is not under a "disability," as defined in the Social Security Act, at any time through the date of this decision. [20 C.F.R. 404.1520(f)].

The ALJ decided that Plaintiff was not entitled to a period of disability insurance benefits under sections 216(i) and 223 of the Social Security Act. The Appeals Council affirmed this decision, and Plaintiff appealed to this Court.

## LEGAL STANDARD UPON REVIEW

Under the Social Security Act, the Commissioner's findings are conclusive if they are supported by substantial evidence and no error of law occurred. 42 U.S.C. § 405(g). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citation omitted). The reviewing court "may not decide the facts, reweigh the evidence, or substitute its own judgment for that of the ALJ." *Floress v. Massanari*, 181 F. Supp. 2d 928, 937 (N.D. Ill. 2002) (citing *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994)). The ALJ is not to "substitute his or her own judgment for a physician's opinion without relying on other medical evidence or authority in the record." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). "While the ALJ is not required to address every piece of evidence, he must articulate some legitimate reason for his decision. . . . Most importantly, he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872 (citations omitted).

Under the Social Security Act, individuals are disabled if they cannot engage in any substantial gainful activity due to any medically determinable physical or mental impairment. 42 U.S.C. § 416(i). The ALJ uses the following inquiry to determine whether the claimant has established disability: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner in Appendix 1, Subpart 4 of the regulations, (4) whether the claimant can perform his past relevant work, and (5) whether the claimant is capable of performing work in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001) (citing *Clifford*, 227 F.3d at 868 (citation omitted)).

The ALJ considers the five factors sequentially, i.e., "[a]n affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. . . . A negative at any point, other than Step 3, ends the inquiry and leads to determination that a claimant is not disabled." *Zurawski*, 245 F.3d at 886 (citing *Zalewski v. Heck*, 760 F.2d 160, 162 n.2 (7th Cir. 1985)).

## DISCUSSION

Plaintiff moves for summary judgment, arguing that the ALJ erred in (1) failing to analyze properly the effects of Plaintiff's bipolar condition, (2) failing to determine that Plaintiff's bipolar condition meets Listing 12.04A3, (3) stating that the onset date of Plaintiff's disability was January 14, 1998 rather than December 14, 1998, (4) disqualifying Plaintiff because drug and alcohol were material to his disability, (5) rejecting the treating physician's opinion regarding the effect of drug and alcohol use on Plaintiff's condition, and (6) that the ALJ's findings discounting Plaintiff's and Mrs. Hughes' credibility were not rationally supported by the record. Plaintiff's third argument is of most concern to this Court.

Plaintiff argues that his bipolar disorder is of listing-level severity because he exhibits a pervasive loss of interest in almost all activities, sleep disturbance, feelings of guilt and worthlessness, and thoughts of suicide, the listed symptoms for depressive disorder, and all of the listed symptoms for manic disorder except hallucinations, delusions, or paranoid thinking.

The ALJ's finding that Plaintiff's bipolar disorder was not of listing-level severity is supported by substantial evidence. The record shows that even after December 14, 1998, which Plaintiff asserts to be the correct onset date, Plaintiff did not persistently exhibit the listed symptoms of depressive or manic disorder.[3] In July 1999, in a Fatigue Questionnaire, Plaintiff described a typical day as including (1) preparing breakfast, lunch, and dinner; (2) working out; (3) taking his child to swimming or day camp; (4) taking a drive; (5) taking his child to a sporting event; (6) putting his children to bed; and (7) watching television before going to bed himself. In November 1999, in an Activities of Daily Living Questionnaire, Plaintiff reported that (1) he or his wife cooked meals, (2) he did light cleaning and the laundry and vacuuming two or three times a week, (3) his condition did not affect his ability to bathe or dress himself, (4) he needed no help remembering to take his medication or go to appointments, (5) he had no problems thinking or concentrating or finishing tasks, and (6) he had no problems with delusions or forgetfulness.

---

[3]Depressive syndrome is established by medically documented persistence, either continuous or intermittent, of at least four of the following: (1) pervasive loss interest in almost all activities, (2) appetite disturbance with change in weight, (3) sleep disturbance, (4) psychomotor agitation or retardation, (5) decreased energy, (6) feelings of guilt or worthlessness, (7) difficulty concentrating or thinking, and (8) thoughts of suicide. 20 C.F.R. § 404, app. 1, subpt. P, § 12.04(A)(1)(a)-(i) (2002) ("§12.04"). Manic syndrome is established by medically documented persistence, either continuous or intermittent, of at least three of the following: (1) hyperactivity; (2) pressure of speech; (3) flight of ideas; (4) inflated self-esteem; (5) decreased need for sleep; (6) easy distractibility; (7) involvement in activities that have a high probability of painful consequences which are not recognized; or (8) hallucinations, delusions, or paranoid thinking. § 12.04(A)(2)(a)-(h).

Moreover, the record is replete with other evidence after December 14, 1998, where Plaintiff reports that he was not experiencing any of the symptoms listed in § 12.04. In January 2000, Plaintiff described himself as a stay-at-home dad and reported to his counselor that he was providing childcare. In April 2000, Plaintiff reported to his counselor that he was working ten hours a week and slept about seven hours a night. In May, August, and September of 2000, Plaintiff reported to his counselor that he slept well. In September 2000, Plaintiff also told his counselor that he was refinishing his basement. This evidence contradicts Plaintiff's claim that his depressive disorder was of listing-level severity because he exhibited a pervasive loss of interest in all activities and sleep disturbances. Furthermore, the record does not indicate that Plaintiff was persistently exhibiting the listed symptoms of manic disorder. Rather, on numerous occasions within the relevant time frame as noted above, Plaintiff reported that he slept well and had no problems thinking, concentrating, or finishing tasks. The counselor noted in April and September 2000 "mild" hypermania and pressure of speech. Finally, Plaintiff did not satisfy the criteria for bipolar disorder of listing-level severity.[4] Therefore, the ALJ's finding that Plaintiff's bipolar disorder was not of listing-level severity was

---

[4]The severity of bipolar disorder can also be established by a:
[m]edically documented history of a chronic affective disorder of at least two year's duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1.     Repeated episodes of decompensation, each of extended duration; or
2.     A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3.     Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

§ 12.04(3)(B)(1)-(4).

supported by substantial evidence.

Plaintiff also argues that the ALJ erred in stating that the onset date of disability was January 14, 1998, and disqualifying Plaintiff from disability insurance benefits because Plaintiff last worked regularly in December 1998. While Plaintiff's application indicates that he became unable to work on December 14, 1998, Plaintiff told the ALJ that he was alleging disability since January 14, 1998. However, there is substantial evidence, even after December 14, 1998 that supports the ALJ's finding that Plaintiff is not disabled, as was discussed above. Therefore, reversal on this ground is not appropriate in either event.

The ALJ found that there was ample evidence that if Plaintiff were to take his medication and cease all substance abuse, he could work productively. Plaintiff argues that the ALJ erred in disqualifying him due to the materiality of drug and alcohol abuse to his disability and in rejecting Plaintiff's treating psychiatrist's, Dr. Wyma's, opinion regarding the effect of Plaintiff's drug and alcohol abuse on his bipolar disorder.

In support of this argument, Plaintiff points to the statement of Dr. Wyma in a January 9, 2001 letter that:

> based on my assessment, it would not be possible to tell whether the drug abuse or the bi-polar [sic] illness were [sic] causing his disability unless he had a solid period of time clear of the drug use and in psychiatric treatment so that we could assess the role of chemical dependency and psychiatric illness.

However, the state agency psychologist, Dr. Tomasetti, reviewed the medical evidence, including a similar opinion by Dr. Wyma in 1999, and concluded that Plaintiff was capable of performing substantial gainful activity.

The ALJ did not deny Plaintiff disability benefits due to Plaintiff's drug and alcohol abuse,

but, rather, because he found the fact that Plaintiff was able to work while abusing drugs and alcohol undermined Plaintiff's credibility. Drug and alcohol abuse are material when the claimant would not be disabled but for the substance abuse disorder. *See Davis v. Chater*, 952 F. Supp. 501 (N.D. Ill. 1996). The ALJ never found Plaintiff to be disabled but for, or due to, his drug and alcohol abuse. Instead, the ALJ found that Plaintiff, despite his drug and alcohol abuse, was not disabled.

Thus, the ALJ's finding that Plaintiff could work productively if he ceased abusing drugs and alcohol is supported by substantial evidence, and no error occurred in this regard.

Finally, Plaintiff argues that the ALJ erred in discounting his and his wife's credibility.

The ALJ stated in his decision that Plaintiff's testimony was "not credible when compared against the objective evidence and factors in SSI 96-7p" because Plaintiff was able, in the past, to work while binging on alcohol and cocaine and not being treated for his bipolar disorder. The ALJ stated that Mrs. Hughes' testimony was not credible because, although she stated that she was afraid to leave Plaintiff home alone with the children, the record indicated that he provides childcare at home.

The ALJ's credibility determinations will be reversed only if they are patently wrong. *Dixon*, 270 F.3d at 1177. The ALJ's credibility determinations were not patently wrong. As was noted above, Plaintiff's own reports several times in 1999 and 2000 that he provided childcare at home undermine Mrs. Hughes' claim that she was afraid to leave Plaintiff alone with the children. Plaintiff's reports that he was redoing his basement and had abused drugs and alcohol for sixteen years while holding down jobs as a welder are substantial evidence that support the ALJ's credibility determinations. Therefore, reversal of this finding of the ALJ is also denied.

## CONCLUSION

The Commissioner's findings are supported by substantial evidence and, thus, are conclusive. Therefore, the Commissioner's decision that Plaintiff was not disabled is affirmed, and Plaintiff's Motion for Summary Judgment is denied.

**IT IS SO ORDERED.**

John W. Darrah, Judge
United States District Court

Date: April 25, 2002